## State Highways Appropriation.

SCHNADER, Attorney General, March 6, 1931.—We have your request to be advised whether under the Act of May 1, 1929, P. L. 1052, any part of the $23,500,000 set apart for allocation among the counties for construction and improvement of state highways and bridges will lapse unless encumbered by contract prior to June 1, 1931. The act to which you refer is the so-called "Wheeler-Flynn Act," which provides in section one that out of such sum as shall hereafter be specified by the legislature for the purpose, your department shall apportion money to the several counties for highway construction work "in the ratio that the unimproved mileage of State highways in any county bears to the total unimproved mileage of State highways in the Commonwealth." This same section established a maximum allocation for any county of $600,000 and a minimum of $200,000, but provided for reallocations from time to time to use up any surpluses accruing because of the fixing of a maximum of $600,000 to any county.

After establishing the basis for apportioning the money among the counties, section one provides that "The moneys thus available for expenditure in any county shall be expended by the Department of Highways for State highway and bridge construction and improvement in boroughs, towns and townships, on any State highway . . . ." Section four provided that "No portion of the moneys specifically required in any fiscal biennium to be used for the construction and improvement of State highways and bridges under the provisions of this Act shall be used for reconstruction, resurfacing, widening, or maintenance . . . but shall be devoted entirely to new construction."

Section five set apart $23,500,000 of moneys in the Motor License Fund with the direction that this amount "shall be allocated by the Department of Highways among the counties for the construction and improvement of State highways and bridges in accordance with this act, during the two fiscal years beginning June first, one thousand nine hundred and twenty-nine."

We are of the opinion that the legislature intended by this act to direct the expenditure during the current fiscal biennium of $23,500,000 for the purposes specified in the act. The language of section four is particularly enlightening.

The legislature there spoke of the money specifically "required in any fiscal biennium to be used" for the purposes of the act.

Under an extremely narrow construction, it would be possible to hold that the legislature intended all of the money set apart to be actually expended during the biennium and that any amounts not actually expended would lapse into the general balance of the Motor License Fund on June 1, 1931.

However, such a narrow interpretation would render the act difficult, if not impossible, to administer. It would be extremely impracticable to endeavor to award contracts in such a way that all payments must become due before June 1, 1931; and we do not believe that the legislature intended such a result.

It is, however, clear that the legislature directed your department to encumber during the biennium the entire $23,500,000 and that it did not intend to permit the allocation or reallocation of any of the $23,500,000 after June 1, 1931.

Accordingly, we advise you that any part of the $23,500,000 set apart by the Act of May 1, 1929, P. L. 1052, which is not expended or encumbered by contract prior to June 1, 1931, will be available for the purposes for which the Motor License Fund is appropriated, without any obligation on the part of your department to allocate it as provided in the first four sections of the act.　　　　　　　　　　　　　　　From C. P. Addams, Harrisburg, Pa.